UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL LANGFORD,<br><br>                Plaintiff,<br>   v.<br>JAMES DZURENDA, *et al.*,<br><br>                Defendants. | Case No. 3:19-cv-00769-MMD-WGC<br><br>ORDER |

Plaintiff Daniel Langford, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has filed an amended civil rights complaint under 42 U.S.C. § 1983. (ECF No. 11 ("FAC").)[1] Plaintiff also has filed an amended motion for a preliminary injunction and a motion for a hearing and waiver of bond for a preliminary injunction. (ECF Nos. 10, 12.) The Court now screens Plaintiff's FAC under 28 U.S.C. § 1915A and addresses his motions.

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

---

[1]An amended complaint replaces an earlier complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989). Therefore, the operative complaint is the First Amended Complaint (ECF No. 11).

States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

///

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.  SCREENING OF FIRST AMENDED COMPLAINT

In Plaintiff's FAC, Plaintiff sues multiple defendants for events that allegedly took place while Plaintiff was incarcerated at Lovelock Correctional Center ("LCC"). (ECF No. 11 at 1-4.) Plaintiff sues Defendants James Dzurenda, Dr. Kim Adamson, Rusty Donnelly, Brian Eggerton, Dr. Michael Minev, Charles Daniel, and the NDOC.[2] (*Id.* at 1-4.) Plaintiff brings one count and seeks monetary damages and declaratory and injunctive relief. (*Id.* at 5, 19.)

Plaintiff alleges the following. In 2016, Plaintiff began complaining to prison officials that Plaintiff suffers from a stomach, bowel, and urinary tract disorder which "causes him severe pain and suffering and interferes with major life activities." (*Id.* at 5.) Plaintiff has

---

[2]The Court dismisses, with prejudice, the § 1983 claim alleging liability by the NDOC because the NDOC is an arm of the State of Nevada and is not a "person" subject to suit for purposes of 42 U.S.C. § 1983. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Black v. Nev. Dep't of Corr.*, Case No. 2:09-CV-02343-PMP-LRL, 2010 WL 2545760, *2 (D. Nev. June 21, 2010).

diarrhea and uses the toilet between seven to 10 times per day, has bloody stools, hemorrhoids, inflammation of the penis which causes severe pain when he urinates, and his testicle feels like it is under pressure and throbs. (*Id.*) Plaintiff feels like he needs to have immediate access to toilet facilities at all times because he does not know when he will feel the need to defecate. (*Id.*) Plaintiff does not exercise because, when he bends over at the waist to pick something up, he has an urge to use the toilet. (*Id.*) Severe bowel movements are triggered when working out and has caused Plaintiff to stay close to a toilet in the unit. (*Id.* at 5-6.) Plaintiff has lost weight and appetite, which causes him to eat small portions seven to eight times per day to maintain his weight. (*Id.* at 6.) He cannot focus or concentrate on anything other than to stress over what might be causing his bodily dysfunctions. (*Id.*) Plaintiff loses sleep at night because of the need to get up and defecate and urinate. (*Id.*)

Plaintiff documented his problems with the medical staff at Southern Desert Correctional Center ("SDCC") by filing an emergency grievance in 2016 complaining of severe pain in the kidney area and by sending a medical kite in 2017, which stated that Plaintiff had seen doctors who had taken x-rays and a urine sample and they had informed him that he had an infection but Plaintiff's pain was now back. (*Id.* at 6, 21, 22.) Plaintiff received a response stating that he was scheduled to see the provider and labs had been ordered. (*Id.* at 22.) Shortly thereafter, "probably because of the Medical Dept. being unable to treat [Plaintiff's] disability, he was transferred to Ely State Prison." (*Id.* at 6.) In February of 2018, Plaintiff was transferred from Ely State Prison ("ESP") to LCC, where he currently is housed. (*Id.* at 7.)

In May 2019, Plaintiff filed an emergency grievance complaining of severe rectal pain, severe diarrhea, blood in his stool, bloating, acid build-up, extreme fatigue, loss of appetite, loss of weight, and pain in the abdominal area. (*Id.*) On May 6, 2019, Plaintiff started the grievance process, complaining that Plaintiff had been diagnosed with *h. pylori* and was not receiving adequate treatment. (*Id.* at 7, 26-28.) Defendant Brian Eggerton, a registered nurse, answered the grievance by stating that Eggerton had spoken to Dr.

4

Adamson, the treatment being administered for Plaintiff's condition was appropriate, Plaintiff's labs would be repeated, and Plaintiff would continue to receive the treatment Dr. Adamson believed was medically appropriate for Plaintiff's condition. (*Id.* at 7, 29.)

On May 30, 2019, Plaintiff filed his first level grievance, complaining that the treatment he was receiving was not working and he was still suffering from the effects of *h. pylori*. (*Id.* at 7, 31.) Defendant Donnelly responded by stating that Plaintiff had received the standard medication recommended for *h. pylori* and that, other than *h. pylori*, all other lab tests the doctor had ordered were in the normal range with no negative results. (*Id.* at 7, 33.) Donnelly further stated that a subsequent blood test showed Plaintiff was still positive for *h. pylori* and the doctor had ordered a second, stronger round of medication, including three antibiotics, and had scheduled Plaintiff to see the doctor again and check for *h. pylori*. (*Id.*) Donnelly also stated in his response that Plaintiff would continue to be treated according to the medical protocol for *h. pylori*. (*Id.*)

Plaintiff submitted a kite to Medical on July 30, 2019 asking for Plaintiff's latest lab results, and Donnelly responded that, as Plaintiff knew, Plaintiff was positive for *h. pylori* and Plaintiff needed to keep taking the antibiotics. (*Id.* at 9, 41, 42.)

Plaintiff had his blood drawn for lab tests four times, submitted three stool samples for analysis, and had three rounds of antibiotics. (*Id.* at 9, 40.)

Plaintiff filed his second level grievance, complaining that either *h. pylori* treatment was inadequate or he was not suffering from *h. pylori* and needed to be seen by a doctor specializing in "ailments in the area of the rectum." (*Id.* at 8, 35-37.) On September 9, 2019, Dr. Minev responded to Plaintiff's second-level grievance, stating Plaintiff had been seen by Medical for complaints since 2016, Plaintiff had been seen by the provider 10 times since arriving at LCC in March 2018, Plaintiff had been given appropriate lab work and exams, the latest of which were all negative, and the results had been explained to Plaintiff and his mother multiple times. (*Id.* at 8, 38.) Dr. Minev's grievance response also noted the medical provider had placed a "GI consult request" with an outside specialist, which had not yet been approved, and Plaintiff should request an appointment if he

continued to have medical concerns. (*Id.*) Dr. Minev had authority to provide Plaintiff with "further testing" when Dr. Minev examined Plaintiff's medical file and learned of Plaintiff's medical complaints, tests, exams, and medication provided by Medical that have not been sufficient to relieve Plaintiff's pain and suffering. (*Id.* at 9-10.)

As discussed below, Plaintiff was approved for a G.I. consultation in September 2019 within 10 days of Dr. Minev's grievance response; Plaintiff was referred to a G.I. consultation and a surgeon performed a colonoscopy and biopsies, and determined Plaintiff was negative for *h. pylori* and there were no significant pathological findings.[3] (ECF Nos. 10 at 12-14, 6 at 13.) Plaintiff alleges that he has not been seen by a specialist or "treated for his condition" since October 2019. (ECF No. 11 at 10.)

Plaintiff alleges that he is still suffering from his "bodily waste disability" and concludes the NDOC is being deliberately indifferent to Plaintiff's serious medical needs and are "discriminating against his disability, by denying him necessary medical treatment of his bodily waste disorder." (*Id.* at 8-9.)

Plaintiff asserts that Dr. Adamson, the doctor who said Plaintiff tested positive for *h. pylori*, "quit trying to treat" Plaintiff's "intestinal/genital infection" after Plaintiff's third round of antibiotic treatment even though Plaintiff continues to suffer from "some waste elimination ailment" that causes diarrhea, bloody stools, painful urination, and a discolored penis. (*Id.*)

Plaintiff also asserts that the NDOC has "intentionally discriminated" against Plaintiff because of his "disability being a major bodily function of his: digestive, bowel and bladder, and reproductive functions, by refusing him treatment after the three (3) attempts to treat him for 'H-Pylori' with anti-biotics, when diarrhea is not a condition condusive [*sic*] with 'H-Pylori.'" (*Id.* at 10 (quotes in original).)

///

///

---

[3]Plaintiff's FAC does not include allegations concerning the G.I. referral, consultation, and surgical tests, but Plaintiff attached the relevant information with Plaintiff's amended motion filed on the same day as the FAC. (ECF No. 10.)

6

Plaintiff asserts that Defendants NDOC, Dr. Adamson, and Dr. Minev "quit treating" Plaintiff due to the cost of treating his condition.[4] (*Id.*) Plaintiff also concludes that these Defendants were acting pursuant to a custom or policy that, if the NDOC could not treat an inmate's "medical disability," then they were to ignore further complaints from Plaintiff to save the NDOC money. (*Id.* at 10-11). Plaintiff also asserts that the bodily functions he has been describing are a "disability worthy of protecting." (*Id.* at 12-13.) Plaintiff further concludes, "[a]s such, Defendants NDOC, Kim Adamson, and Michael Minev knew or should have known that their deliberate failure to treat [Plaintiff] after the three (3) anti-biotic treatments failed to cure the problems; would cause [Plaintiff] to continue to defecate 7 to 10 times per day, with diarrhea, bloody stool, pain urinating, itching, burning of the rectal area, and cramps of the bowels" and associated effects. (*Id.* at 13.)

In addition, Plaintiff asserts that the NDOC, which was administered by Defendant James Dzurenda from 2016-2017, "was to transfer" Plaintiff to ESP rather than try to solve Plaintiff's malady. (*Id.* at 13.) ESP transferred Plaintiff to LCC in 2018 after more medical complaints. (*Id.*) Defendant NDOC, which is now administered by Charles Daniel as Director, has "stopped all treatment of [Plaintiff's] disorders, knowing that no treatment at all will continue to cause [Plaintiff] pain and suffering," as well as an inability to enjoy normal life activities. (*Id.* at 13-14.) Plaintiff concludes the NDOC has deliberately discriminated against him by denying him medical treatment after NDOC doctors "have been unable or unwilling to treat [Plaintiff's] disabilities," violating both his Eighth Amendment rights and his rights under the Americans with Disabilities Act ("ADA"). (*Id.*)

### A. Eighth Amendment Claims

Plaintiff understandably is frustrated by the apparent inability of medical professionals to successfully resolve Plaintiff's medical problems. However, as the Court

---

[4] To the extent Plaintiff is alleging he received no medical care following Dr. Minev's grievance response, the Court does not accept the allegation as true. Although, as discussed below, Plaintiff's subsequent G.I. specialist consultation and surgical procedure were performed outside of the NDOC by doctors who are not employed by the NDOC, that does not mean Plaintiff received no medical attention following the testing and treatment directly provided by Dr. Adamson and the grievance response by Dr. Minev. (*See* ECF No. 10 at 10-11.)

previously explained to Plaintiff, Defendants' failure to solve Plaintiff's medical problems is not sufficient to constitute an Eighth Amendment violation for deliberate indifference to serious medical needs. (*See* ECF No. 7 at 7.) Plaintiff has not and will not be able to state a colorable Eighth Amendment claim based merely on the alleged failure to resolve Plaintiff's medical problems.

Allegations that constitute negligence or gross negligence are also insufficient to state an Eighth Amendment claim. The Court previously explained to Plaintiff applicable Eighth Amendment law. (*See id*. at 5-7.) The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment when he or she acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations omitted).

To prove deliberate indifference, a plaintiff must prove the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does *not* state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice

does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106 (emphasis added). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Accordingly, it is *not* enough that the official objectively *should have* recognized the risk but did not. *See Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001).

Additionally, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Rather, if a prisoner or another doctor disagrees with a doctor's course of treatment, to establish deliberate indifference, a prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" *and* "that they chose this course in *conscious* disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (emphasis added).

In addition, prison officials who know of a substantial risk to an inmate's health and safety are liable only if they responded *unreasonably* to the risk, even if the harm ultimately was not averted. *See Farmer*, 511 U.S. at 844. What is reasonable depends on the circumstances, including the defendant's authority, capabilities, and resources. *See Peralta*, 744 F.3d at 1084-85.

When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show the delay led to further harm. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"); *see also Jett*, 439 F.3d at 1096.

///

If defendants choose to override medical recommendations and deny a person medical care not because of differences of medical opinions, not because medical care was not medically indicated or would not be helpful, and not because of misdiagnosis but solely because they have created an administrative policy that would require an inmate to suffer medically, then there may be deliberate indifference. *See Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014). However, merely including a conclusory allegation that a policy is insufficient; a plaintiff must go beyond bare assertions and plead facts sufficient to show there is a policy, what the policy is, and what role the defendant played in designing, adopting, and implementing the policy. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009).

Moreover, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009). Thus, a defendant may not be held liable merely because that person's colleagues or subordinates violated the plaintiff's rights, but a "showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011); *see Peralta,* 744 F.3d at 1086 (holding that it was not deliberate indifference for grievance responder to defer to a medical provider's assessment of the plaintiff's medical needs).

In its original screening order, the Court dismissed Plaintiff's Eighth Amendment claim with leave to amend and explicitly informed Plaintiff that, if he chose to amend those claims, "for *each* Defendant, Plaintiff must allege *facts* sufficient to show Defendant believed that a particular course of treatment was required, had the resources and authority to pursue that course of treatment, but unreasonably refused to do so, resulting in specified harm to Plaintiff." (ECF No. 7 at 8 (emphasis in original).) The Court further

informed Plaintiff that merely alleging Defendants have not cured Plaintiff and merely asserting the treatment Plaintiff received was not effective or adequate will not be sufficient to state a colorable Eighth Amendment claim (*Id.*) The Court also informed Plaintiff that allegations of "a difference of opinion or negligence or claims that Defendants should have believed something else will not be sufficient to state a colorable claim. Conclusory and collective allegations also will not be sufficient." (*Id.*)

The main thrust of Plaintiff's allegations in the FAC is that Defendants' attempts to address Plaintiff's serious medical problems have not been successful. But Plaintiff fails to allege facts sufficient to show any Defendants were deliberately indifferent to Plaintiff's medical problems.

Although the Court previously instructed Plaintiff that Defendants must personally violate Plaintiff's rights to be liable in a § 1983 action, Plaintiff alleges that the NDOC was administered by Defendant James Dzurenda from 2016-2017. Such an allegation fails to state a colorable claim against Dzurenda for deliberate indifference to serious medical needs.

Similarly, Plaintiff does not allege any facts concerning Defendant Daniel other than alleging that Daniel is the Director who now administers the NDOC. This does not state a colorable claim against Daniel for deliberate indifference to serious medical needs.

With regard to Defendant Eggerton, Plaintiff merely alleges that Eggerton responded to Plaintiff's grievance stating that Eggerton had spoken to Dr. Adamson, the treatment being administered for Plaintiff's condition was appropriate, Plaintiff's labs would be repeated, and Plaintiff would continue to receive treatment the doctor believed was medically appropriate for Plaintiff's condition. Plaintiff does not allege facts to show Eggerton believed the doctor's treatment decisions were incorrect or Eggerton responded unreasonably by deferring to the doctor's decision and ordering labs again. Plaintiff also has not alleged facts to show Eggerton was the cause of harm to Plaintiff. Plaintiff therefore has not alleged facts sufficient to state a claim against Eggerton for deliberate indifference to serious medical needs.

Plaintiff also fails to state a colorable claim against Defendant Donnelly. Plaintiff alleges that Plaintiff sent a grievance stating the treatment he was receiving was not working and he was still suffering from the effects of *h. pylori*, and Donnelly responded by stating Plaintiff was receiving the standard medication and treatment for *h. pylori*, all other tests the doctor ordered had come back normal, and Plaintiff was receiving more medication and would see the doctor and be tested again. Plaintiff also alleges that Donnelly told Plaintiff that he needed to keep taking the antibiotics after Plaintiff tested positive for *h. pylori*. Plaintiff does not allege any facts that show Donnelly's responses were unreasonable or Donnelly believed this medical approach was improper. Plaintiff also has not alleged facts to show Donnelly was the cause of harm to Plaintiff. Plaintiff therefore has not alleged facts sufficient to state a claim against Donnelly for deliberate indifference to serious medical needs.

Plaintiff also fails to state a colorable claim against Defendant Dr. Adamson. To the extent Plaintiff is attempting to state a claim based on the allegations that the treatment Dr. Adamson provided did not cure Plaintiff, Plaintiff fails to state a colorable claim against Dr. Adamson for deliberate indifference to serious medical needs. To the extent that Plaintiff is alleging that Plaintiff disagrees with Dr. Adamson's course of treatment or believes Dr. Adamson should have known to treat Plaintiff differently or was otherwise negligent, such allegations are also not sufficient to establish deliberate indifference. Plaintiff alleges no facts that show Dr. Adamson believed the treatment he provided was inappropriate, Dr. Adamson deliberately denied Plaintiff necessary treatment, and thereby consciously disregarded an excessive risk to Plaintiff's health and caused harm.

Moreover, Plaintiff makes the vague assertion Dr. Adamson "quit trying to treat" Plaintiff's "intestinal/genital infection" after Plaintiff's third round of antibiotic treatment even though Plaintiff continues to suffer from a "waste elimination ailment" that causes diarrhea, bloody stools, painful urination, and a discolored penis. However, Plaintiff does not allege facts to show Dr. Adamson believes Plaintiff has an infection. Although Plaintiff

appears to believe that he currently is suffering from an infection, this does not mean Dr. Adamson believes this or believes testing or treatment at this time would be necessary or effective. Plaintiff has not alleged facts to show Plaintiff communicated with Dr. Adamson following the third round of antibiotic treatment and the specialist referral, much less facts to show Dr. Adamson is denying Plaintiff treatment and being deliberately indifferent to Plaintiff's serious medical needs. Despite the Court's previous instructions regarding the factual allegations necessary to adequately allege deliberate indifference to serious medical needs, Plaintiff has not alleged facts sufficient to state a colorable claim against Dr. Adamson.

Plaintiff's FAC includes a conclusory allegation that Dr. Adamson and Dr. Minev were acting pursuant to a custom or policy that, if the NDOC could not treat an inmate's "medical disability," then they were to ignore any further complaints from Plaintiff to save the NDOC money. Putting aside the conclusory nature of the allegation concerning a custom or policy, Plaintiff has not alleged facts sufficient to show Dr. Adamson and Dr. Minev believed Plaintiff needed treatment but denied him treatment, whether due to a policy or otherwise. Accordingly, the Court dismisses the Eighth Amendment claims with prejudice, as amendment would be futile. Despite the Court's previous screening order and guidance, Plaintiff has not alleged facts sufficient to show any defendant was deliberately indifferent and caused Plaintiff harm by unreasonably denying him care. If Plaintiff believes Dr. Adamson or other NDOC employees have been negligent and wishes to pursue claims for negligence against them, Plaintiff must bring any claim for negligence in state court, not in this Court.[5]

**B.  ADA Claims**

An inmate may state a colorable claim under the ADA if he or she alleges facts sufficient to show he or she was "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical

---

[5]Plaintiff is responsible for learning the applicable statute of limitations and filing any complaint in state court in a timely manner. The Court expresses no opinion about the merits of any negligence claim.

13

handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). However, the ADA "prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010); *see Marlor v. Madison Cty.*, 50 Fed. App'x 872, 874 (9th Cir. 2002) (holding that inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld due to discrimination on the basis of disability). "Courts hold that allowing prisoners to utilize the ADA and [the Rehabilitation Act] as causes of action for not receiving medical treatment is simply making 'an end run around the Eighth Amendment.'" *King v. Calderwood*, Case No. 2:13-CV-02080-GMN-PAL, 2015 WL 4937953, at *2 (D. Nev. Aug. 19, 2015) (citing *Deeds v. Bannister*, Case No. 3:11-CV-00351-LRH-VPC, 2013 WL 1250343, at *5 (D. Nev. Jan. 8, 2013); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). Conclusory allegations of discriminatory motive are insufficient; specific, non-conclusory factual allegations are required. *See Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

Here, it is apparent Plaintiff is alleging he did not receive treatment or did not receive adequate treatment for his medical condition, not that Plaintiff was discriminated against because of a disability. Plaintiff's conclusory allegations of discrimination do not change this. The Court therefore dismisses the ADA claims with prejudice, as amendment would be futile.

### III.  MOTION FOR PRELIMINARY INJUNCTION

Based on Plaintiff's allegations in Count I, Plaintiff has moved for a preliminary injunction requiring the NDOC and NDOC Medical Director to schedule Plaintiff to be taken to an outside specialist "to perform any tests necessary to determine why Plaintiff's 'h-pylori' is incurable, and what exactly is causing the diarrhea and pain while urinating." (ECF No. 10 at 9.) Plaintiff alleges that he has not been treated for *h. pylori* since he went to the specialist in October 2019. (*Id.* at 4.)

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Moreover, under the PLRA, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm the court finds requires preliminary relief," and must be "the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

In addition, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself*." Pac. Radiation Oncology, Ltd. Liab. Co. v. Queen's Med. Ctr.*, 810 F.3d 631, 635-36 (9th Cir. 2015).

As discussed above, Plaintiff fails to state a colorable claim. According to documents submitted with Plaintiff's motion, he consulted with a G.I. specialist who sent Plaintiff for surgical testing. (ECF No. 10 at 13.) Plaintiff was additionally referred to a specialist for chronic diarrhea and abdominal pain and Plaintiff subsequently went to the hospital where a surgeon conducted two biopsies and determined Plaintiff was "negative for helicobacter pylori microorganisms (adequate positive control)." (ECF No. 6 at 13.) Plaintiff therefore has not provided evidence his symptoms are being caused by *h. pylori* and he needs treatment, much less evidence Defendants believe Plaintiff is suffering from *h. pylori* and needs treatment. The results of biopsies found no significant pathological findings. (*Id.*) Defendant Donnelly informed Plaintiff that the biopsies and colonoscopy came back completely normal. (ECF No. 10 at 13-14.) In addition to the numerous NDOC doctor visits, lab tests, and stool analyses, according to the information Plaintiff submitted, Plaintiff has obtained the surgical diagnostic testing the G.I. specialist recommended.

Although Plaintiff is understandably frustrated that testing and treatment have not resolved his medical problems, Plaintiff has not presented facts showing he is likely to succeed on his claims or that he will suffer irreparable harm absent preliminary injunctive

relief. Accordingly, the Court denies Plaintiff's amended motion for a preliminary injunction and the motion for a hearing and waiver of bond for a preliminary injunction. (ECF Nos. 10, 12.)

### IV. CONCLUSION

It is therefore ordered that Plaintiff's First Amended Complaint (ECF No. 11) is the operative complaint.

It is further ordered that Plaintiff's First Amended Complaint (ECF No. 11) is dismissed with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's amended motion for a preliminary injunction (ECF No. 10) and motion for a hearing and waiver of bond for a preliminary injunction (ECF No. 12) are denied.

The Court certifies that any *in forma pauperis* appeal from this order would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

The Clerk of Court is directed to enter judgement accordingly and close this case. No further documents shall be filed in this closed case.

DATED THIS 17th Day of December 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE